# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 19-1230V
### Filed: August 23, 2022

|  |  |
|---|---|
| JOHN PATRICK CHARD , | |
| Petitioner, | Special Master Horner |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Alan Kenneth Nicolette, Nordstrom, Steel, Nicolette and Blythe, Tustin, CA, for petitioner*
*Jennifer A. Shah, U.S. Department of Justice, Washington, DC, for respondent*

## Decision Regarding Attorney's Fees and Costs[1]

On August 19, 2019, petitioner, John Patrick Chard, filed this claim under the National Vaccine Act, 42 U.S.C. § 300aa-11, alleging that the pneumococcal conjugate ("Prevnar") vaccine and influenza ("flu") vaccine caused "injuries, including shoulder injury related to vaccine administration." (ECF. No. 1, p. 1.) The petition also includes repeated references to related upper arm pain. (*Id.* at 2.) The case was closed following a joint stipulation of dismissal and petitioner now seeks an award of attorneys' fees and costs in the amount of $16,230.24. (ECF No. 41.) Respondent opposes an award of attorneys' fees and costs, contending that petitioner lacked a reasonable basis for filing the petition. (ECF No. 42.) For the reasons described below, petitioner is awarded attorneys' fees and costs in the reduced amount of $15,004.58.

---

[1] Because this decision contains a reasoned explanation for the special master's action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. *See* 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information the disclosure of which would constitute an unwarranted invasion of privacy. If the special master, upon review, agrees that the identified material fits within this definition, it will be redacted from public access.

## I.     PROCEDURAL HISTORY

This case was assigned to me on August 21, 2019.  (ECF No. 4.)  Petitioner filed a Statement of Completion on April 10, 2020.  (ECF No. 23.)  Respondent filed a Rule 4 Report recommending against compensation on February 17, 2021. (ECF No. 35.)

A status conference was held May 6, 2021.  (ECF No. 36.)  During the status conference, I discussed petitioner's medical history and noted numerous issues that would make it very difficult for petitioner to prevail.  I indicated that "[a]lthough petitioner's petition discusses the requirements for demonstrating a Shoulder Injury Related to Vaccine Administration or 'SIRVA,' it appears very unlikely that this type of injury exists in this case.  During this call, we discussed the issues of onset and petitioner's delay in treatment, lack of objective findings supporting any new shoulder pathology, and subjective complaints relating instead to the upper arm." (*Id*. at 1.)  I explained that "[w]ithout a clear shoulder pathology, petitioner will not be able to rely on the theory of causation typically associated with SIRVA or SIRVA-like cases.  Without a theory of causation, it is unclear whether gathering additional testimonial evidence would be productive." (*Id*. at 2-3.)  I further explained:

> I will monitor this case closely to see whether petitioner is able to produce an expert report and whether that report reflects a credible discussion of petitioner's medical history.  If petitioner cannot produce such a report, it is unlikely he will have a reasonable basis for continuing his claim further . . . I recognize that petitioner likely has a sincerely held belief that he suffered a vaccine-cause[d] injury; however, in light of all of the above, petitioner may wish to give serious consideration to voluntarily dismissing his case given the legal and evidentiary issues he faces in seeking to prove his claim.

(*Id*. at 3.)

Following that status conference, the parties filed a joint stipulation of dismissal and an order concluding proceedings issued on July 23, 2021.  (ECF Nos. 39-40.)

## II.     FACTUAL HISTORY

On August 23, 2016, petitioner received both the pneumococcal conjugate ("Prevnar") vaccine and influenza ("flu") vaccine in his left arm.  (Ex. 2.)  Petitioner avers that within 48 hours he began to experience pain, discomfort, and limited range of motion in the left shoulder *and arm*.[2]  (Ex. 4, p. 1.)  Petitioner's medical records include an MRI from 2009 confirming that petitioner had a prior full thickness tear of the supraspinatus tendon along with mild degenerative changes. (Ex. 8.)  Petitioner avers, however, that "[t]he pre-existing left shoulder pain I had prior to the vaccination is

---

[2] Petitioner actually filed two affidavits.  The first is marked as Exhibit 4.  The second was not marked with an exhibit designation.  It appears at ECF No. 28 on the docket.  Petitioner's wife also submitted an affidavit filed at ECF No. 27.

different from the pain, and location I experienced following the vaccination." (Ex. 4, p. 3.)

Subsequent to the vaccinations at issue, petitioner had medical encounters as follows: September 27, 2016 primary care appointment (Ex. 18, pp. 28-30); November 29, 2016 orthopedic appointment (Dr. Elzik) regarding finger contracture (Ex. 12, pp. 2-4); December 27, 2016 orthopedic encounter for Xiaflex injection and December 28, 2016 orthopedic encounter for manual contracture correction, with further follow up appointments on December 30, 2016, and January 3, 2017 (*Id*. at 5-8); January 9, 2017 primary care appointment (Ex. 18, pp. 25-27); January 24, 2017 final orthopedic follow up for contracture (Ex. 12, p. 9). Petitioner's alleged vaccine injury was not raised at any of these encounters. However, on February 13, 2017, approximately six months post-vaccination, petitioner underwent a self-ordered x-ray of his left humerus. (Ex. 15, p. 2.) The purpose of the x-ray was to investigate "[m]id humerus pain for 6 months" and "[e]valuate for foreign body." The results were normal. (*Id*.)

Thereafter, petitioner's medical records are silent until May of 2017. At that time, petitioner was admitted to the hospital following a near drowning incident while snorkeling in Maui. (Ex. 20, p. 2.) Later that month, petitioner had a cardiology appointment during which he indicated that his chest had hurt since receiving CPR in connection with his near drowning. (Ex. 19A, pp. 79-81.) Petitioner had a gastroenterology appointment on May 21, 2017 (Ex. 17, p. 5) and a primary care appointment on May 22, 2017 (Ex 18, pp. 22-24). At the May 22 primary care appointment, petitioner reported back weakness and also for the first time that his left *arm* (not shoulder) had been sore since his flu shot. (Ex. 18, p. 22.) Petitioner was referred to physical therapy for his back, but made no mention of any shoulder complaint. (Ex. 14, pp. 2-3.)

Petitioner was evaluated by his orthopedist, Dr. Elzik, on May 30, 2017, with a chief complaint of "left upper arm pain." (Ex. 3, pp. 2-4.) The history of present illness indicates:

> Unfortunately, approximately eight months ago, he underwent two vaccinations and he states they were both in the same arm in the left upper arm and they have been causing him pain and discomfort ever since that time. He states that it will actually wake him up at night. He notes "burning sensation" that is moderate in pain severity and causes some weakness at times as well. It can occur in the morning. He has tried rest, ice, and anti-inflammatory to no avail and he says that he has not had any formal treatment for this. He has had x-rays, he says outside where no foreign body was noted.

(*Id*. at 2.) The only finding upon examination was "diffuse tenderness to palpation across his left upper arm and biceps tendon." (*Id*. at 3.) The assessment was "left upper arm pain." Dr. Elzik indicated that "I have explained to the patient today, he is having left upper arm pain, which could be attributable to perhaps an inflammatory type

reaction or muscular tendonitis as a result of his vaccinations that he obtained eight months ago." (*Id*. at 4.) Petitioner was referred to physical therapy. (*Id*.)

Petitioner pursued a course of physical therapy for left bicep pain which was improving; however, on July 31, 2017, petitioner reported that his pain had been aggravated by lifting a Murphy bed. (Ex. 6, p. 4.) Petitioner had pain and weakness, but his range of motion was within normal limits. (*Id*.)

Petitioner's medical records are again silent with respect to this complaint until March 12, 2019. At that time, petitioner requested an MRI for his left shoulder in connection with a neurology appointment. (Ex. 16, p. 2; Ex. 9, pp. 2-3.) The MRI showed a high-grade partial thickness tear of the distal supraspinatus along with mild glenohumeral joint arthropathy and some degree of mechanical impingement. (Ex. 9, p. 2.) In his affidavit, petitioner agrees that this later MRI shows the same injury as his prior 2009 MRI. (Ex. 4, p. 3.)

At his March 19, 2029, neurology evaluation, petitioner reported pain and weakness "that developed after he had flu shots at the local pharmacy a few months ago." (Ex. 16, pp. 5, 7.) (In fact, the vaccine(s) at issue in this case occurred 31 months prior by that point.) Petitioner wanted an EMG/NCV to determine whether he had any nerve disorder, neuropathy, or cervical radiculopathy to explain his left arm weakness. (*Id*. at 5, 7.) The EMG/NCV was negative and although left triceps weakness was noted, it was not due to a nerve disorder. (*Id*. at 6.) Petitioner was diagnosed with arm weakness. The neurologist recommended further consultation with an orthopedic surgeon; however, petitioner indicated that he had already been aware of his prior rotator cuff problem and had previously deferred on a recommendation to pursue surgery. (*Id*.)

Petitioner averred that he continued to suffer "pain discomfort and limited range of motion to the left shoulder and arm," but no further medical evaluations are documented.

## III. PARTY CONTENTIONS

In his motion, petitioner contends that he brought this claim in good faith and with a reasonable basis because he and his wife aver that he began having shoulder pain and limited range of motion within 48 hours of receiving his flu and Prevnar vaccines in his left shoulder. (ECF No. 41, pp. 3-4.) Additionally, petitioner's treating physician, Dr. Elzik, opined that his condition was likely attributable to his vaccinations. (*Id*.) Citing the Federal Circuit decision in *Perreira v. Secretary of Health and Human Services*, 33 F.3d 1375 (Fed. Cir. 1994), petitioner suggests that he had a reasonable basis to pursue this claim up to the point of the May 6, 2021 status conference. (*Id*.)

Respondent counters that the affidavits cited by petitioner are insufficient to support a reasonable basis. Respondent indicates that, although the affidavits must be considered, the special master is not required to credit the affidavits or treat them as

dispositive.  (ECF No. 42, p. 7 (citing *James-Cornelius v. Sec'y of Health & Human Servs.*, 984 F.3d 1374, 1380-81 (Fed. Cir. 2021)).)  Here, respondent contends the affidavits are of "dubious credibility," because they are inconsistent with petitioner's behavior as described in the medical records.  (*Id.* at 7-8.)  With regard to Dr. Elzik's opinion, respondent stresses that the actual language included in the medical record is equivocal and speculative.  (*Id.* at 8.)  Respondent also contends that Dr. Elzik's opinion is undermined by other medical record evidence (namely a prior history of pre-existing shoulder injury and subsequent diagnostic imaging).  (*Id.*)  Whereas petitioner argues there was a reasonable basis up to the point of the May 6, 2021 status conference, respondent stresses that the medical facts at issue were known at the time of the petition filing, meaning there was never a reasonable basis to file this case.  (*Id.* at 8-9.)

Petitioner did not file any reply.

## IV.   LEGAL STANDARD

The Vaccine Act permits an award of reasonable attorneys' fees and costs. § 15(e).  Petitioners who are denied compensation for their claims brought under the Vaccine Act may be awarded attorneys' fees and costs "if the Special Master or Court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."  42 U.S.C. § 300aa-15(e)(1); *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1360-61 (Fed. Cir. 2012).  Such an award is within the discretion of the Special Master.  42 U.S.C. § 300aa-15(e)(1).  Thus, even if a claim is brought in good faith and has a reasonable basis, a Special Master may still deny attorney's fees.  *See* 42 U.S.C. § 300aa-15(e)(1); *Cloer*, 675 F.3d at 1362.  "Good faith" and "reasonable basis" are two distinct requirements under the Vaccine Act.  *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017).

"Good faith" is a subjective standard.  *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).  A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred.  *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).  The standard for finding good faith has been described as "very low," and findings that a petition lacked good faith are rare.  *Heath v. Sec'y of Health & Human Servs.*, No. 08-86V, 2011 WL 4433646, at *2 (Fed. Cl. Spec. Mstr. Aug. 25, 2011).

"Reasonable basis," however, is an objective standard.  Unlike the good faith inquiry, reasonable basis requires more than just petitioner's belief in his claim.  *See Turner*, 2007 WL 4410030, at *6.  In *Cottingham v. Secretary of Health & Human Services*, the Federal Circuit explained that to demonstrate a "reasonable basis," the petitioner must come forward with objective evidence relating to the Vaccine Act's prima facie petition requirements for the filing of a claim.  971 F.3d 1337, 1345-46 (Fed. Cir. 2020).  Specifically, the petition must include an affidavit and supporting documentation demonstrated that the injured vaccinee:

(1) received a vaccine listed on the Vaccine Injury Table;

(2) received the vaccination in the United States, or under certain stated circumstances outside of the United States;

(3) sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) or that was caused by the vaccine;

(4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and

(5) has not previously collected an award or settlement of a civil action for damages for the same injury.

*Id*. (citing § 300aa-11(c)(1)).

To establish a reasonable basis for attorneys' fees, the petitioner need not prove a likelihood of success.  *See Woods v. Sec'y of Health & Human Servs.*, No. 10-377V, 2012 WL 4010485, at *6-7 (Fed. Cl. Spec. Mstr. Aug. 23, 2012).  In general, a reasonable basis analysis "may include an examination of a number of objective factors, such as the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation."  *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018); *accord Cottingham*, 971 F.3d 1337.  "More than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis."  *Cottingham,* 917 F.3d at 1346.  For the reasonable basis requirement, "the burden is on the petitioner to affirmatively demonstrate a reasonable basis."  *McKellar v Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 305 (2011).

More than a mere scintilla of evidence has been characterized as "evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation."  *Cottingham v. Sec'y of Health & Human Servs.,* 154 Fed. Cl. 790, 795 (2021) (citing *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 765 (4th Cir. 2021)). The determination of whether there is "more than a mere scintilla" of objective evidence supporting causation may be satisfied by circumstantial evidence, but there cannot be an unsupported basis for the claim.  *Cottingham*, 971 F.3d. at 1346.  An affidavit constitutes objective evidence that must be considered in determining whether there is a reasonable basis when it contains testimony the witness is competent to give, but a special master is not required to find that the affidavit alone constitutes more than a mere scintilla of evidence.  *James-Cornelius*, 984 F.3d. at 1380-81.  Particularly, "medical records may serve as important corroborating evidence for evaluating testimony's credibility."  *James-Cornelius*, 984 F.3d. at 1380.

## V.    ANALYSIS

In this case, the petition alleged first and foremost that petitioner suffered a shoulder injury, stating that he suffered "injuries, including shoulder injury related to vaccine administration."  (ECF No. 1, p. 1.)  Such injuries are typically labeled as

"SIRVA," especially when they meet the requirements of the Vaccine Injury Table. Unsurprisingly, "SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.)." 42 C.F.R. § 100.3 (c)(10). Additionally, some shoulder injury cases have proceeded on a cause-in-fact basis; however, these injuries have largely had the same basic character of being injuries to the structures of the shoulder. *E.g.*, *Colbert v. Sec'y of Health & Human Servs.*, No. 18-166V, 2022 WL 2232210 (Fed. Cl. Spec. Mstr. May 27, 2022); *Layne v. Sec'y of Health & Human Servs.*, No. 18-57V, 2022 WL 3225437 (Fed. Cl. Spec. Mstr. July 12, 2022); *Kelly v. Sec'y of Health & Human Servs.,* No. 17-1918V, 2022 WL 1144997 (Fed. Cl. Spec. Mstr. Mar. 24, 2022). These SIRVA-like cause-in-fact shoulder cases have had factual issues that precluded reliance on a Table injury, but have proceeded on theories derived in significant part from the same literature cited by the respondent when placing SIRVA on the Vaccine Injury Table. Especially with the causal presumption afforded by the Vaccine Injury Table for SIRVA, it is conceivable that a SIRVA-like claim could demonstrate reasonable basis largely as a function of a temporal relationship between the vaccination and subsequent shoulder injury even without an explicit medical opinion supporting the allegation.

Review of the record evidence in this case, however, contains no evidence apart from petitioner's own say-so that he suffered any post-vaccination shoulder injury at all. Instead, petitioner's medical records show that he consistently complained of upper arm pain rather than shoulder pain. In fact, when petitioner initially self-referred himself for objective imaging, he had an x-ray of the mid-humerus rather than his shoulder. A later MRI of his shoulder was consistent with his preexisting shoulder injury. To the extent petitioner indicated in his affidavit that his complained of condition included shoulder pain, he also specifically averred that "[t]he pre-existing left shoulder pain I had prior to the vaccination is different from the pain, *and location* I experienced following the vaccination." (Ex. 4, p. 3 (emphasis added).) That is, petitioner distinguishes his post-vaccination condition from what he experienced when he did have a documented shoulder injury.[3] To the extent petitioner filed this petition on the basis of a shoulder injury, it lacked a reasonable basis.

However, the petition did also plead a post-vaccinal injury to the upper arm. (ECF No. 1, *passim*.) In contrast to the alleged shoulder injury, the fact of petitioner's upper arm pain is corroborated by his medical records, including his resort to a self-referred x-ray of the humerus, the history he provided to his physicians when he

---

[3] It should also be noted that petitioner's affidavits also present a credibility issue with regard to his purported shoulder injury. Petitioner specified in his first affidavit that his shoulder injury has manifested with a limited range of motion that affected his ability to swim. (Ex. 4, p. 4.) His medical records confirm, however, that between the time he ordered an x-ray to evaluate his arm pain and the time he first presented to Dr. Elzik with a complaint of arm pain, he had been snorkeling in Maui, which would obviously entail swimming. (Ex. 20, p. 2.) In a second affidavit, petitioner further explained his reduced range of motion in his shoulder and indicated that he cannot reach overhead or pick up more than 10 pounds. He indicated that the condition of his shoulder caused him to give up his role as a eucharistic minister because he could not raise a chalice during mass. (ECF No. 28, p. 4.) However, petitioner's orthopedic exam did not identify any reduced range of motion and did not diagnose any shoulder problem.

eventually did seek treatment, and Dr. Elzik's opinion that vaccine-causation of that arm pain was possible.  As explained above, Dr. Elzik indicated that "I have explained to the patient today, he is having left upper arm pain, which could be attributable to perhaps an inflammatory type reaction or muscular tendonitis as a result of his vaccinations that he obtained eight months ago."  (Ex. 3, p. 4.)

Respondent is correct to note that Dr. Elzik's causal assessment is very weak and could not preponderantly support causation.  I count four equivocations in a single sentence – "could be," "perhaps," "inflammatory *type*," and "or muscular tendonitis."  Additionally, it was supported by minimal exam findings and occurred belatedly (about nine months post-vaccination.  The fact that petitioner's allegation of vaccine-caused arm pain lacked an adequate supporting medical opinion was the crux of the May 6, 2021, status confernece wherein the ability to come up with an expert opinion was identified as, and ultimately proved to be, a threshold issue for moving forward.  The viability of petitioner's claim would also have been hampered by the lack of a clear diagnosis, the minimal objective findings supporting the subjective complaint of pain, and the delay in seeking treatment.

However, petitioner is not obligated to demonstrate a likelihood of success to recover attorneys' fees and costs.  Petitioner's affidavit, corroborating medical records showing an extended pursuit of treatment for what was believed to be vaccine-related arm pain, and Dr. Elzik's treating physician opinion additionally supporting that belief, albeit equivocally, provided more than a mere scintilla of evidence to support the initial filing of this petition.[4]  Because petitioner dismissed this case shortly after the May 6, 2021 status conference, it is not necessary to reach the question of whether petitioner's reasonable basis dissipated after that point.

## VI.   AMOUNT OF THE AWARD

I have reviewed the billing records and additional documentation submitted with petitioner's motion for attorneys' fees and costs.  The overall amount sought ($16,230.24) is reasonable; however, the following reductions are made:

- The billing records include $31.25 for secretarial tasks.  (ECF No. 41-1, p. 7.)  Such tasks are not billable in this program. *E.g.*, *Guy v. Sec'y of Health & Human Servs.,* 38 Fed. Cl. 403, 408 (1997) (denying compensation for office overhead including office supplies, administrative or clerical staff, and secretarial support).

---

[4] Although SIRVA and SIRVA-like claims are far more common, prior petitioners have established that vaccine administration can cause other injuries to the arm.  *E.g., Kirby v. Sec'y of Health & Human Servs.,* 997 F.3d 1378 (Fed. Cir. 2021) (petitioner successfully pursuing a claim of injection-related radial nerve injury); *Small v. Sec'y of Health & Human Servs.,* No. 15-478V, 2019 WL 6463985 (Fed. Cl. Spec. Mstr. Nov. 1, 2019) (petitioner proving that vaccine injection can cause an axillary nerve injury leading to eventual adhesive capsulitis, but failing to prove that her own injury was vaccine caused), *mot. rev. den'd*, 2020 WL 918799 (Fed. Cl. Jan. 27, 2020).  It should also be noted, however, that petitioner did not specifically allege any nerve injury and petitioner's neurologist opined that his condition was not due to a nerve disorder.

- The billing records include $1,194.41 in costs.  (ECF No. 41-1, p. 7.) While it is obviously understood that there are costs associated with securing medical records, nothing in petitioner's submission identifies these costs and no supporting documentation was provided.  Accordingly, the reasonableness of these costs cannot be evaluated.  Petitioner bears a burden of demonstrating the reasonableness of the costs incurred. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992) ("Not only must any request for reimbursement of attorneys' fees be reasonable, so also must any request for reimbursement of costs."); *Gardner-Cook v. Sec'y of Health & Human Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005) ("While petitioner is entitled to reimbursement for reasonably incurred costs, she bears the burden of proving that these costs are, in fact, reasonable.  Although petitioner explains that the remaining invoices were lost in 2002, when petitioner's counsel "remove[d] items in storage", the undersigned cannot compensate petitioner for these undocumented, and, therefore, unexplained expenses.").

Accordingly, the requested fees and costs are reduced by a total of $1,225.66, resulting in an award of $15,004.58.

## VII.   CONCLUSION

In light of the above, petitioner's motion for an award of attorneys' fees and costs is hereby **GRANTED.  Accordingly, I award a total of $15,004.58 as a lump sum in the form of a check payable to petitioner and his counsel, Alan K. Nicolette, Esq.**

The clerk of the court shall enter judgment in accordance herewith.[5]

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master

---

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.